The next case is Sharon Ransom v. Richard Sherman. Mr. Sherrod is here for the appellate. Mr. Canup is for the appellee. Mr. Sherrod, when you're all situated there at the table, you may begin. Thank you. Thank you.  Good morning, please, the court. I'm Hank Sherrod. I represent Ms. Ransom. The foundational question for this court is whether there was a lawful order. It was finessed by the district court and by the appellee in this case. Ms. Ransom was in her own home, in her bed in fact, did the normal natural thing any homeowner might do if there's commotion on their lawn, came out onto her porch, observed what was happening 25 to 30 feet away and did nothing else. What she observed was not a fight among police officers or some, you know, situation where there was a large gathering of the public, a wreck. What was observed and what was going on was a man on his knees, her son, with his hands behind his back in the process of being cuffed by a deputy. Yeah, we know the facts and we look at the facts in a light most favorable to Ms. Ransom. But it's not disputed that she's yelling and screaming at these officers. And why isn't it their arguable probable cause for an arrest for disorderly conduct and obstruction of government operations if the officers reasonably believe that they were, that she was distracting them in conducting their arrest of her son? Do you have a, what's the best case you can point to to show that there's clearly established law that shows that officers could not have engaged in that arrest? First off, we're starting here with this is not a public incident. The, this court following the U.S. Supreme Court's decision in Houston v. Hill has made it crystal clear in multiple cases, Scott v. City of Atlanta, Davis v. Williams, recently Carvey Caddo, if I'm pronouncing it correctly, that a citizen can respond to a police officer, even with a, excuse me, Your Honor, fuck you. What happened here, importantly, was not any of those things. What happened here was an order, an order that had no lawful basis, was not designed for officer's safety, was not designed. So can I ask you, I guess you keep saying that, that the order had no lawful basis. But I mean, Judge Wilson has asked you about two Alabama statutes. There's a third for resisting arrest. And it seems to me that your case rises or falls on the notion that it's not even a close call. Nobody with any sense could think that this was even arguably recklessly creating a risk of causing public inconvenience, annoyance, or alarm by either tumultuous or threatening behavior or unreasonable noise. I mean, we've seen the dash cam video. We heard a lot of tumultuous behavior and a lot of unreasonable noise. And why wasn't it reasonable, to Judge Wilson's point, for the officers in the heat of the moment to think that this is a close call? I mean, once you say close call, isn't the case over? If you just say, take this incident and put it in a public street, if you take this incident and it's not in opposition to a clearly unlawful order, I'm sure. So I'm sorry, but I feel like we're kind of assuming the truth of the conclusion here. You keep saying in opposition to an unlawful order. Why is it an unlawful order when they're trying to effectuate an arrest? This is sort of on the spur, in the heat of the moment. She is saying, you know, that's my son. Get your hands off him or whatever she was saying. And then they say, go inside. And she says, no. Why is that not, at least arguably, resisting arrest, disorderly conduct, or obstructing justice? If law enforcement does not arrive in our lives without having to have a foundation for their authority, OK? Ordinarily, for example, in the U.S. Supreme Court, Mr. Knapp submitted to you all, it takes place on a public street where they're given extensive authority to manage traffic and do their job. When they come onto our property, there's a whole other set of rules that usually apply. They are not presumed to have the authority to tell us exactly what to do and how to do it. And why aren't they allowed to briefly direct the movement of onlookers while they are effectuating an arrest? The rationale put forward by the officer in this case was that her presence was... But we're looking objectively here. And so why aren't they allowed to briefly direct the movement? If there is a legitimate law enforcement reason, absolutely, probably there's enough of an umbrella for them to do that. But the underlying question for a jury, I believe, in this case, and really as a matter of law, frankly, in my humble opinion, biased, humble opinion, is whether or not in the first place there's any law enforcement purpose to be served to keep somebody from standing on a porch silently watching. Let's assume, for purposes of this question, that there is 11th Circuit and U.S. Supreme Court case law that enables police to give a command to move from a porch inside while an arrest is being effectuated. She resists. Isn't there an arguable, probable cause to arrest her for at least one of the three enumerated statutes? Absolutely. If it's a lawful order to go inside and she has no right to stand on her porch and watch what the police are doing 30 feet away where there isn't a fight, any legitimate law enforcement safety or other legitimate concern, absolutely. She can be ordered to go inside and she can be arrested. But even if the arrest is lawful, that still gets us to the use of force, correct? It does. But there is no question that it is not – we can't turn the way somebody resists an unlawful arrest into a basis for arrest. If we are speaking words, we're not attacking, we're not encouraging, we never encouraged him to resist, to be clear. And then this was, I think a reasonable jury can conclude, was entirely about law enforcement authority not being properly respected and not at all about legitimate law enforcement rules. And a reasonable jury can conclude there was not – this was about, I say you go inside, you go inside. It was never about, oh, we need to safely get – you didn't go inside. She says the officers then used excessive force when they put her in the police car. They chose two things. They chose one to put in – But our law says that, you know, there's a minimal – there's a, you know, you got to use some force in order to conduct an arrest and put someone in a police car. And if there's minimal injury, the law puts up with – the law will put up with that. Why does she have more than just minimal injury? I do not believe this court's case has analyzed the officers. The objective reasonableness of the officers kind of based on the amount of injury, that is just one factor. Well, we said in Rodriguez v. Farrell, and I'm quoting, painful handcuffing without more is not excessive force in cases where the resulting injuries are minimal. Close quote. That is certainly true in what I would call your generic handcuffing case. Never brought one, never would. Okay. Certainly, handcuffing with ordinary handcuffs applied to – in an ordinary manner are not an issue for juries or that, you know, they should be dismissed out of hand. But we have pain control. These are essentially a big piece of metal that has barely any movement. They were placed behind her back. And then with a grip on them, you twist them forward, and that digs the cuffs into the hands. This isn't a little chain dangling between her wrists. You twist it forward, and it digs into the wrists, which you testified it did. So is it your position that the use of these kinds of cuffs is just per se excessive force? Absolutely not. Absolutely not. Because, I mean, in a way, I would almost hope you to say yes because the difficulty for the officer is all this is – I mean this is so easy for us in a courtroom after the fact. But the difficulty for the officer in the heat of the moment is he's got – these guys had an arrest to effectuate, and there are multiple people. You can sort of envision the head on the swivel with the mother on the porch and the son in the front yard, and now they're arresting her. And it's just very difficult for him to know. We can assess ten-factor tests with the benefit of hindsight, but how is he supposed to buzz through the ten factors in five seconds and decide whether this is excessive force? And that's what qualified immunity, it seems to me, is all about. Yes, it's about avoiding officers using the heat of the moment, their own personal anger at somebody and what happened, to use something that's more than necessary. Now, those cuffs could have been kept behind her back if she could have been allowed to walk. Instead, they were twisted up over her head like this, digging into her wrists, and then when she said that they hurt, he kept doing it. And then when she was in a car, he didn't – she didn't jump and put her foot in like that. Then he spritzed her with a little pepper spray. None of that was about, I would say, objectively reasonable force. And a jury can certainly easily conclude there was no basis for them to believe that there was a – she should be arrested or experienced this force. All right, thank you, counsel. We'll hear from Mr. Knupp. Am I pronouncing your last name correctly? You're close enough, Mr. Knupp. Good morning and thank you for the opportunity, Matt. Please, the court. On behalf of Deputy Sherman, I would ask that the court affirm the decision of the district court. You know, Appellant Ransom said the foundational question in this case is whether the order was a lawful order. In her brief, she said the case was about sending a message of accountability to law enforcement officers. I would suggest to the court that the message that would be sent to law enforcement officers should the district court be overturned would be much more dangerous and threatening than that. The message would be that officers can't control the scene in which they're trying to effectuate a lawful arrest. The message would be that what the Supreme Court has said and what this court has said on many occasions, which to quote, is that the risk of harm to officers is minimized when police officers exercise unquestioned command of the situation. The message would be that that rule of law doesn't apply anymore. So can I ask you a question? So – and I want Mr. Sherrod to correct me if I don't have this quite right because I want to represent his position fairly. But I think I understood him to say that sort of, yes, on a public street, but once you're on private property, sort of the rules of engagement change. I heard that as well, and I don't think that that's a fair statement of the law, and it's also not a fair statement of the facts. This was a traffic stop. This case began with a high-speed chase. When the chase ended, it was because a motorcycle, as you can see in the video, pulled inexplicably to the officer's view off the road. They had no reason to know what he was doing, what house he was at, had no idea this was his family home. And so it was a traffic stop. And there's no case law whatsoever that limits the authority of officers to control the situation to a traffic stop. In fact, Michigan v. Summers, in which that quote that I just read you came from, was a case involving an arrest warrant at a house or a search warrant at a house. I may be wrong. It had nothing to do with a traffic stop. So instead of complying with the officer's order – and I want to be clear, too, about, you know, there's some question to ask as to, well, what was the basis for the order? Okay, again, the officers don't know why he picked this house. So they don't know if he picked it because they're going to get ambushed by this person who's standing on the porch. They don't know that she's related to the person. In fact, she said nothing. And if you'll look at Exhibit 3 to the Plaintiff's Deposition, you'll see that she's directly in the line of fire. She zoned out. That's my son. Well, you're right that she said that ultimately. But when the officer gave the initial order, when Deputy Sane said, go back inside, she had said nothing. At that point in time, it's very clear she was directly in the line of fire. The deputies on the scene had pulled their weapons and were pointing at an individual who had violated every traffic law in the book. And so when she did speak up and she said, that's my son, to quote her husband, she, quote, came unglued, okay? She just outright disregarded the order that had been given. That's what her husband testified to. Her behavior, the totality of her behavior on that day is exactly what gave rise to the reason to arrest her. If she had just gone in her house, and by the way, her husband did that. He just backed up into the house. He could still look at what was going on. She could have done the same and she would not have been subject to arrest. But she continued to yell, scream, defy the officers. She stomped her foot. And, in fact, the Plaintiff admitted in the district court that she did, caused alarm to the public. So the district court just picked one of these three statutes, which clearly applied, and said she could be arrested for resisting. So they had arguable probable cause to arrest her. But what about the excessive force claim? Well – Don't we look at the facts and alike most favorable to her and not the officers? And she says they used more force than was necessary to put her in the police car and then they pepper sprayed her. So if we look at the facts and alike most favorable to her and those facts support excessive force, then why did the officers get qualified immunity if there's an issue of fact about whether or not they used excessive force? Simply because there is not an issue of fact as to whether she used excessive force. We'll give her every fact that reasonably appears in her favor in this record. And, as you stated a moment ago, Your Honor, the right to make an arrest necessarily carries with it the right to use some degree of physical coercion. And not every – The pepper spray necessary. Well, Your Honor, actually it's funny that Vineyard, V. Wilson, is the case that Plaintiff cited as clearly establishing the law against using pepper spray in this situation. And, in fact, Vineyard is the case that suggested that pepper spray is a reasonable thing to do when a person doesn't get in a vehicle. And the video clearly shows she – Do you remember how many seconds in Vineyard were involved? Because it's three seconds here from the time she plants her right foot inside the back of the patrol car. Three seconds later she gets what she contends is a spray of pepper spray. Isn't there a little bit of time for compliance allowed? Vineyard was a three-second spray of pepper spray. No, I'm talking about between the commands. I see. And effectuating it. The actual fact is – Clearly, if I say get in the car and one second later hit you with a bat, I haven't given you time to comply. There has to be some compliance time. Here, three seconds was allowed. What is reasonable about that? The facts at Vineyard are a little bit different when the actual pepper spray was applied. So, it wasn't a question of how long it took someone to get in the car. That's why I'm asking you in this case. Why is it reasonable in this case to only afford three seconds for compliance for what appears in the video to be a slightly overweight middle-aged woman with her hands up behind her shoulders to get in all the way into a patrol car? It's reasonable for multiple reasons. For one thing, they still got an active scene. They need to get her in the car as quick as possible. She's already slowed them down. Secondly, she has been – So, when you say an active scene, how many – there's five or four officers on site at that time? Well, there's four officers, I believe, at that time. And there's multiple people in the house who they haven't been able to identify. There's an individual who's just completed a high-speed chase. So, in addition, they walk her to the car. She knows where they're going. She sits down in the car. She clearly doesn't put that second leg in. The officer has time to both order her to do it. She's still not doing it. He then has to unholster his pepper spray, point at her. Even when he's pointing it at her, she's not doing it. Not until after he points it at her and she says spray her for a half burst is what she says. You would agree there's a factual – at this point in the record, there's a dispute. We have to believe her, okay, even though the video does not indicate it. But a half burst of pepper spray that was apparently so minimal that she never even asked for anything related to it, never complained about it, used in a circumstance exactly as this court instructed officers to use it, cannot possibly give rise to denial of qualified immunity. Is it your contention that de minimis injury can never give rise to excessive force claim? Well, this court has used the term de minimis to indicate a situation in which excessive force is not applied. But isn't that just one of the factors we look at? Well, if you were to speak of de minimis injury, but the de minimis doctrine is broader than that. I'm talking about the injury, which is what you referred to when you said she didn't ask for – Injury is a component of determining whether de minimis force gives rise to excessive force claim. But it's not going to be all in and all, correct? No, in fact – but pepper spray has been recognized as de minimis force. I've cited an Eighth Circuit case specifically discussing that, and I believe this court has as well. And getting back to the handcuffing, again, you know, the court has specifically said that painful handcuffing without more is de minimis force. Well, is an officer not entitled to rely upon that decision to understand that he can use a handcuffing maneuver much less violent than the one approved in Rodriguez with significantly less injury? Deputy Jones testified that, quote, she was screaming at us the entire time. Shouldn't it be a jury that looks at the 11-minute video and makes the calculation for there were about 20 seconds of that 11 minutes that she was actually speaking? And wouldn't a jury need to hear the volumes? The trial judge said her voice was angry, disrespectful, and displayed excessive volume of all the things that were going out in that yard that day – the siren, the motorcycle, the officer screaming. Where on that spectrum did Ms. Ransom's voice actually fall? I'm not sure, Your Honor, that tone of the voice makes a difference as to a disorderly conduct. It did to the district court judge, didn't it? Well, the district judge said that she – there was arguable probable cause to arrest her for resisting arrest, and so her tone of voice wouldn't make a difference. Well, he said in the order that he was basing his decision on, quote, her voice was angry, disrespectful, and displayed excessive volume. But you're saying that didn't factor in? I don't think that Judge Smith's order intended to pigeonhole that in any way. I read Judge Smith's order a little bit different than that. I read it as saying that the – she was arrested for resisting arrest based on the totality of her conduct, which included refusing to go inside, yelling, stomping her feet, doing all of those things, and distracting the officers from what they needed to be doing, which was to effectuate an arrest. But the district court didn't even reach obstruction, but obstruction is – if I were riding on a clean slate, I might have chosen obstruction. This court in Phillips v. Irvin applied Alabama's obstruction statute to almost identical facts. It was a truck stop where an officer was trying to effectuate a traffic stop, and a truck store owner kept coming up and bothering the officer as he tried to do it. District court said that there was arguable probable cause to arrest him for obstruction of governmental operations, which is what he was arrested for, and this court affirmed that. Well, this is the same thing. Deputy Sherman was attempting to assist his other officers as backup on an arrest, and he in fact had to divert his attention to dealing with misransom. So that's another statute that is perfectly on point, and so we don't even have to reach whether a jury should evaluate her tone of voice or anything like that. We also have disorderly conduct is a charge that could have been applied. And there's – I mean, directly on point, Alabama Court of Criminal Appeals decision, Powell v. State, where yelling loudly in the presence of only police officers is enough. So – and I could go on, but there's multiple cases that would suggest that the district court was correct in this regard. Your Honor, if you don't have any further questions, I will yield back. I would just say that, you know, even if the court were to believe, even if plaintiffs were to argue that Deputy Sherman could have acted differently than he did, that's not the inquiry. The inquiry is, according to the Supreme Court, whether existing precedent placed the constitutional question beyond debate. There's no doubt that Deputy Sherman does not fail under that standard. Thank you, Mr. Canuff. Thank you. We'll hear again from Mr. Sherrod. So let me tackle a couple of things. First off, you know, again, this was on a porch on private property. Certainly, in some scenarios, it is reasonable for officers to control people that are on their porches. You know, we have to be flexible. I mean, I'm not trying to create any special rule that she's exempt from any police control. But in the light most favorable to Ms. Ramson, I would put to you that this was not a heat of the moment. This was numerous police officers, one 20-something-year-old kid that – mama didn't have anything to do with what he did – who had submitted to arrest. Of course, initially, the officers could have known none of that, right? But when this happened, when this happened, he was on his knees submitting to arrest. He was in the physical possession of a deputy, if not actually cuffed, in the process of being cuffed with multiple officers, including the defendant in this case who was walking towards the porch, towards Ms. Ramson. And she did nothing to interfere with that arrest. Nothing. She didn't. And the rule they're asking for is that, you know, we sort of presume that any situation where there's an arrest means it's, you know, all these things that we fear. And we want – we don't want to deprive officers of the authority to deal with those things that they have to deal with. And I do not want this court to send that message that officers can't reasonably deal with the situation. But I also don't – I fear for a rule that says, you know, the officers can claim they were distracted and claim heat of the moment and all these other things that a reasonable jury might disagree with. This might really be, according to a reasonable jury, not about someone who is interfering with anything, not even arguing. What piece would you point to that would give the officers in this case clear warning that what they did was unconstitutional? So it's foundational that they have to have some – a lawful order. It is foundational. Okay? We don't – they have specific case statutes that give them authority to manage the public roads. They are under – they are on private property. The question is what gives them the authority to just demand – you know, there isn't going to be a case. This is going to be – it's obvious that this is not a public disturbance. This is not the things that these laws were designed to protect against. And unless we just assume that you can't, by your mere presence, by your coming out of your door, if you don't jump and – or, you know, when they say jump, if you don't say how high, you can be put in jail. Because this means that any time any citizen is in the presence of any police officer who gives them an order and they're doing something policey, then they will always be found. The First Amendment says that we have a right to speak. Okay? We have a right to oppose police authority that is not lawful. So does that mean because at least resisting arrest and the disorderly conduct here and I guess the obstruction of governmental operations as well, all of those sort of inherently deal with police orders? So are you saying each of those statutes is unconstitutional? Oh, absolutely. I'm sorry. No, no, no. At least as applied here, they're all unconstitutional. This has nothing to do with constitutionality of the statutes. I mean you just said the First Amendment. We have a right to speak. We have a right to oppose police directives. Unlawful police directives. So the question is what rule says to police officers that they can order me – they say, Hank, step one foot to the right because I think you ought to be here. Now he says you are distracting me here. I can make all kinds of ridiculous but they are – the assumption here is that they are dealing with a difficult situation so we're going to cut them some slack. A reasonable jury conclude this was nothing to do with a difficult situation. This was not a person who was threatening them. This is somebody – it could have been a neighbor. It could have been ten people. They could have ordered ten people on a block who came out in disturbance. Every time something happens with the police, we're saying the police can order you get in your house, you get in your house, and then they can send all the deputies out to arrest all of them who refuse to go in. They get out their video cameras because they think that's wrong. Unless they – she was interfering. She had a First Amendment right. First off, she had probably another right to be on her property but she had a First Amendment right to watch and not interfere. Every single case that they pointed to involves people getting into the police officer's business. There's everything – and even those cases sometimes say, you know, you have a First Amendment right to ask an officer a question, to say, fuck you, I live here. There's a specific case from 2016 unpublished from this court in which that was held, citing Houston v. Beehill, not to give a basis for arguable probable cause to arrest. We have your argument, Mr. Sherrod.  Thank you.